Entered: May 24th, 2021
Signed: May 24th, 2021



DAVID E. RICE
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHRISTOPHER DAVIS, | ) | Case No. 16-15555-DER |
| and TERESA DAVIS, | ) | (Chapter 13) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| TERESA DAVIS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adversary Pro. No. 17-00280 |
| | ) | |
| PNC BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF DECISION ON AWARD OF ATTORNEYS' FEES

After conducting a trial and considering post-trial briefing and closing arguments, this Court determined that the defendant, PNC Bank, N.A. ("PNC"), was liable to the plaintiffs, Christopher Davis and Teresa Davis (the "Davises"), for the reasons set forth in the Memorandum Opinion entered on January 29, 2021 [Docket No. 116] (the "Memorandum Opinion"). The Court concluded therein that PNC was liable for reasonable attorneys' fees

~ 1 ~

under the Maryland Consumer Protection Act (the "MCPA").[1] Accordingly, the Court simultaneously entered a Scheduling Order [Docket No. 117] that set a briefing schedule and a hearing on, among other things, the issue of the amount of the attorneys' fees to be awarded. That issue has now been fully briefed [Docket Nos. 125, 126, and 136] and a hearing thereon was conducted on May 4, 2021.[2]

Shortly before that hearing commenced on May 4, 2021, the attorneys for the Davises filed a Supplemental Disclosure of Compensation of Attorney for Debtor (the "First Supplemental Disclosure") that indicated the agreed fee for this adversary proceeding was a "40% contingency fee agreement of total gross award plus any monies held in escrow, if permitted by the court."[3] At the hearing, PNC argued that such a 40% contingency agreement would limit the attorneys' fee award here to 40% of the $72,230.00 in damages awarded in the Memorandum Opinion—that is, to an award of only $28,892.00. At the conclusion of the May 4, 2021 hearing, the Court directed that (i) a copy of the contingency fee agreement be provided to PNC, (ii) counsel confer on how they wished to proceed in light of that agreement, and (iii) a status conference regarding any further proceedings would be held on May 18, 2021.

On May 6, 2021, the attorneys for the Davises withdrew the First Supplemental Disclosure.[4] They then immediately filed another Supplemental Disclosure of Compensation of Attorney for Debtor (the "Second Supplemental Disclosure") that indicates they have agreed to accept:

---

[1] Md. Code Ann., Com. Law §§ 13-101 *et seq*.
[2] The Scheduling Order also directed the parties to submit briefing on the Court's direction in the Memorandum Opinion that PNC provide the Davises with an accounting for the amount required to reinstate their mortgage loan under the terms of the modification agreement in question. At the May 4, 2021 hearing, the parties advised the Court that they agree that PNC did so in its Response to Plaintiffs' Opposition to Submission by Defendant PNC Bank, N.A. Addressing Mortgage Debt filed on April 23, 2021. See Docket No. 134. Accordingly, no further order is necessary or required on that issue prior to entry of judgment against PNC.
[3] Main Case Docket No. 149.
[4] Main Case Docket No. 150.

> Any fees awarded by the Court for successful prosecution of the Maryland Consumer Protection Act Count. Counsels' fees shall be limited to any awarded in accordance with paragraph 2.c. of the controlling fee agreement. Paragraph 2.c. of the Retainer Agreement reads [in total]:
>
>> There are times when clients will be awarded a statutory sum (a monetary payment based on statute). If there is an award of a statutory sum without any other damages, then the Clients *shall not be obligated* to pay Attorneys' Fees beyond the amount awarded by the court.[5]

On May 11, 2021, the Davises filed a Line in this adversary proceeding indicating (among other things) that their attorneys have "agreed to limit their attorneys' fees to the Court's award for statutory damages only."[6]

On May 14, 2021, PNC filed its Response to Plaintiffs' Recent Filings (the "Response"), which makes clear that the Davises provided PNC a copy of the engagement agreement with their attorneys.[7] In the Response, PNC cites the entire text of paragraph 2 of that engagement agreement, which the Court assumes is complete and accurate for purposes of this Memorandum of Decision.[8] PNC argues in the Response, among other things, that an award of reasonable fees here should not exceed $80,059.89—that is, the sum of $60,167.89 paid by the Davises pursuant to paragraph 2(a) of the engagement agreement and $28,892.00 allowable as a 40% contingency fee pursuant to paragraph 2(b) of the engagement agreement. PNC contends paragraph 2(c) has no application to the issue at hand.

At the status conference on May 18, 2021, the parties advised the Court that further proceedings were not needed. As a result, this matter was held under advisement. This

---

[5] Main Case Docket No. 151 (brackets and emphasis in original).
[6] Line: To Provide Brief Update Prior to the May 18, 2021 Hearing on the Motion and Opposition to Plaintiffs' Application for Attorneys' Fees, Docket No. 139. At the May 18, 2021 status conference, the attorneys for the Davises clarified the meaning of this language and confirmed on the record that they agreed to limit their fee to the amount to be awarded by the Court pursuant to § 13-408(b) of the MCPA.
[7] Docket No. 140.
[8] *Id.*, at p. 4. In light of the Court's decision, no purpose would be served by setting out paragraph 2 in its entirely.

Memorandum of Decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 54(d)(2)(C) of the Federal Rules of Civil Procedure (made applicable here by Rule 7054(b)(2) of the Federal Rules of Bankruptcy Procedure). For the reasons explained below, the Court will enter a judgment against PNC that includes an award of attorneys' fees and expenses in the aggregate amount of $302,472.67 for all legal services rendered to the Davises through the date of entry of judgment in accordance with this Memorandum of Decision.

The Davises were represented in this adversary proceeding by Mary Migues-Jordan of The Law Office of Mary A. Jordan ("Jordan") and Sari K. Kurland of The Kurland Law Group ("Kurland"). Jordan is a well-known practitioner in this Court who graduated from law school in 2001, was admitted to practice in Maryland in 2001, and has almost 20 years of experience in bankruptcy and litigation matters. Jordan is a solo practitioner. Kurland is also a well-known practitioner in this Court who graduated from law school in 1987, was admitted to practice in Maryland in 2000 (after prior admission in the District of Columbia in 1990), and has more than 30 years of experience in bankruptcy and litigation matters. Kurland is the managing partner of a small law firm comprised of herself and two associates, one of whom is Marie-Claire Noukelak ("Noukelak"), who graduated from law school in 2009 and was admitted to practice in Maryland in 2009.

In their joint Motion for Allowance of Compensation and Reimbursement of Expenses [Docket No. 125] (the "Motion"), Jordan and Kurland sought compensation in the total amount of $387,067.66, comprised of attorneys' fees of $380,928.82 and expenses of $6,138.84. The attorneys' fees for the initial portion of the engagement through July of 2018 were calculated at hourly rates of $350.00 for Jordan, $350.00 for Kurland, and $295.00 for Noukelak. Beginning

in August of 2018, the hourly rates applied were $400.00 for Jordan, $400.00 for Kurland, and $350.00 for Noukelak. The Motion is accompanied by detailed time records for all the services rendered and expenses incurred. PNC filed a timely objection to the requested fees.[9]

In the Plaintiffs' Amended Memorandum in Support of Motion for Approval of Attorneys' Fees and Reimbursement of Expenses [Docket No. 136] (the "Amended Memorandum"), the amount requested is now voluntarily reduced to a total of $302,472.67, comprised of $298,946.39 in attorneys' fees and $3,526.28 in expenses.[10] The voluntary reduction in attorneys' fees includes an additional write-off of $7,245.83 in specific time entries billed and an across the board 20% reduction of the remaining time entries. As a result, the requested attorneys' fees have been reduced by $81,982.43 (or approximately 21.5%) and the expense reimbursement by $2,612.56 (or approximately 42.5%). The Amended Memorandum is also accompanied by detailed time records and a calculation of the amount sought as voluntarily reduced. The amount of the request made in the Amended Memorandum represents a material exercise of billing judgment both in amount and as a percentage of the original request made in the Motion. The format and detail of the time records submitted are more than adequate for the Court to determine the reasonable amount of an attorneys' fees award in this case.

In determining the amount of an attorneys' fees award, this Court applies a loadstar analysis and considers the twelve factors adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting test set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). See also *McAfee v.*

---

[9] Opposition of PNC Bank, N.A. to Motion by Plaintiffs' Counsel for Allowance of Compensation and Reimbursement of Expenses, Docket No. 126.
[10] Allocated by firm, the $302,472.67 total includes (i) $152,032.00 in fees and $3,004.99 in expenses for Jordan through February 22, 2021, and (ii) $146,914.39 in fees and $521.29 in expenses for Kurland through December 16, 2019.

*Boczar*, 738 F.3d 81 (4th Cir. 2013).  Those factors as described by the Fourth Circuit are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client: and (12) attorneys' fees awards in similar cases.  *McAfee v. Boczar*, 738 F.3d at 88 n.5.[11]

In *McAfee v. Boczar*, the Fourth Circuit explained that "proper calculation of an attorney's fee award involves a three-step process."  *Id*.  The first step is to determine the loadstar amount by multiplication of the hours reasonably expended by reasonable hourly rates.  Determination of reasonable hours and hourly rates is to be guided by the twelve *Johnson* factors.  *Id*.  The second step is to deduct hours spent on "unsuccessful claims unrelated to successful ones."  *Id*. (quoting *Johnson*, 488 F.2d at 244).  The final step is to award some percentage of the resulting amount "depending on the degree of success enjoyed by the plaintiff."  *Id*.

As applied in the instant case, the loadstar analysis dictates that the attorneys' fees requested in the Amended Memorandum are reasonable and should be awarded.  It was reasonable and appropriate for Jordan, a solo practitioner, to bring in Kurland and Noukelak to

---

[11] The Court recognizes that PNC refers the Court to *Friolo v. Frankel*, 373 Md. 501 (2003), and *Hyundai Motor Am. v. Ally*, 183 Md. App. 261 (2008), and argues that the standard applicable to an award of reasonable attorneys' fees under the MCPA should be the loadstar approach as applied under Maryland law.  The loadstar analysis as employed by the Maryland courts does not differ materially from that adopted by the Fourth Circuit and would not yield a different result given the facts and circumstances of this case.

assist in prosecution of claims of the Davises against PNC. The time records confirm the amount of time expended by the three attorneys who provided legal services to the Davises. The time expended was appropriate given the nature of this case. The hourly rates are reasonable compared to rates for attorneys of comparable experience in this district. Consideration of the *Johnson* factors—whether individually or as a whole—weighs if anything in favor of an upward rather than a downward adjustment. Here, the attorneys were called upon to represent clients who have limited financial resources (they are debtors in a Chapter 13 bankruptcy proceeding) against an adversary that is one of the nation's largest financial institutions represented by a large and prominent law firm. PNC mounted (as was its right) a vigorous defense. Nevertheless, Jordan and Kurland were tireless in their prosecution of this case on behalf of the Davises. The successful outcome itself demonstrates their litigation skills.

In the Court's view, it is important to bear in mind when applying the *Johnson* factors that the Davises prevailed under the MCPA, which includes the fee shifting provision applicable here. Moreover, the Court of Appeals of Maryland has stated that the MCPA "is intended to be construed liberally in order to promote its purpose of providing a modicum of protection for the State's consumers." *Washington Home Remodelers, Inc. v. State, Office of Attorney General, Consumer Protection Div.*, 426 Md. 613, 630 (2012). See also, *Andrews & Lawrence Prof'l Servs. v. Mills*, 467 Md. 126, 162 (2020) ("The General Assembly has specifically instructed that the CPA shall be construed and applied liberally to promote its purpose of protecting consumers.") (citing § 13-301(14)(iii) and § 13-303 of the MCPA). As the Court of Appeals pointed out in the latter case, it "has warned against construing remedial statues like the CPA with a 'narrow or grudging process' that 'exemplif[ies] and perpetuate[s] the very evils to be

remedied.'" *Andrews & Lawrence*, 467 Md. at 162 (quoting *Pak v. Hoang*, 378 Md. 315, 326 (2003) (brackets in original)).

The MCPA fee shifting statute is intended to permit Maryland consumers (many of whom may have limited financial means) to hold to account parties like PNC who have the advantage of unlimited economic resources. The MCPA also recognizes that many consumer claims involve relatively small amounts of money that would make engagement of an attorney economically unfeasible if the fee must be borne by the consumer. The MCPA encourages legal representation of such plaintiffs so that they may actually enforce their rights.

That is exactly what happened in this case. No amount of explaining or blaming of the Davises can change the fact that PNC's December 22, 2015 letter purporting to terminate the loan modification agreement in question was wrong. It was wrong in every sense of the word. It was, as the Court found, simply false. Jordan and Kurland were unrelenting in their effort to right this wrong. Their work is exactly what the Maryland General Assembly intended to incentivize when it adopted the fee shifting provision of the MCPA.

In this regard, the Court is mindful that as PNC has argued the fee shifting provisions of the MCPA are intended to be compensatory. As the Court of Appeals of Maryland has long held, "[p]unitive damages are not available in a private cause of action under the [MCPA]." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 161 n.20 (2013) (citing *Hoffman v. Stamper*, 385 Md. 1, 49 (2005)). It is thus not surprising that the Court of Appeals has also held that "the private remedy under [the MCPA] was 'purely compensatory' and 'contains no punitive component.'" *Hoffman v. Stamper*, 385 Md. at 49 (quoting *Golt v. Phillips*, 308 Md. 1, 12 (1986)). Accordingly, the MCPA directs this Court to award reasonable compensation to attorneys for representation of the successful consumer and it does not permit this Court to

punish PNC by augmenting such an award as a substitute for punitive damages. In sum, the focus of the MCPA is on such reasonable compensation, not as PNC argues on the terms on which a successful plaintiff may have engaged or paid their attorneys. Accordingly, the Court rejects PNC's argument that paragraph 2 of the engagement agreement limits the extent of attorneys' fees that may be awarded under § 13-408(b) of the MCPA.[12]

Alternatively, PNC suggests that the requested attorneys' fees are out of proportion to the amount involved and results achieved. That misses the point under the MCPA. The fees are in proportion to the unsuccessful defense PNC mounted against the successful consumer protection claims made by the Davises.

Next, the Court turns to consideration of whether hours should be deducted for legal work done on unsuccessful claims unrelated to successful ones. As explained at length in the Memorandum Opinion, the Davises filed a four-count complaint against PNC. The Court granted the Davises relief under each count. In that sense, there were no unsuccessful claims made by the Davises. More importantly, the four counts sought relief that was related to the same course of events. As this Court determined, that course of events began when PNC sent the Davises the December 22, 2015 letter that purported to terminate the loan modification agreement on false and secret grounds—a letter the Court held was itself a violation of the MCPA.[13] That being the case, the same legal effort and evidence was required for each of the four counts. This is not an instance where a particular claim necessitated discrete work that would not have been undertaken had the claim not been made. In other words, all the legal effort here was necessary for the Davises to prevail on the claim that entitles them to reasonable

---

[12] In any event, Jordan and Kurland have now clarified that they agreed with the Davises that the attorneys' fees for this matter would be limited to the amount awarded by this Court under the MCPA.
[13] Memorandum Opinion, p. 36 at n. 119.

attorneys' fees under the MCPA. In evaluating this second step of the fee award process, the Court finds it significant that Jordan and Kurland have voluntarily applied an across the board 20% reduction in their fees, a portion of which reduction is more than sufficient to address any time spent on theoretically unsuccessful claims made by the Davises. The Court thus concludes that a further downward adjustment as argued by PNC is not appropriate here.

The third and final step requires the Court to evaluate whether some deduction should be made based upon the degree of success. The magnitude of success is not measured for this purpose solely by the dollar amount of the judgment against PNC. There can be no doubt that the Davises would view themselves as more successful if the Court were to enter a larger judgment. The primary objective here, however, was enforcement of a loan modification agreement made by PNC that would enable the Davises to retain their family residence. The Court held that the loan modification agreement is enforceable—that is, that the Davises may reinstate their loan on the economically favorable terms of the modification agreement. Thus, in that regard the Davises were entirely successful. That success is not measured (as PNC has argued) by the extent to which indebtedness to PNC was reduced.[14] This is exactly the sort of claim the MCPA contemplates—one where the legal effort required to vindicate a consumer's rights may exceed the amount of any judgment. In evaluating this third step, the Court finds that the remaining portion of the 20% across the board reduction in Jordan and Kurland's fees is more than sufficient to address any necessary reduction for degree of success and again concludes that no further downward adjustment is appropriate.

---

[14] PNC is, of course, mistaken in its assertion that the Davises were not relieved of any liability to PNC. For example, the Court's ruling means that the Davises will be able to reinstate the mortgage loan on their residence without payment of the late charges otherwise accruing after November 1, 2015. In addition, the Davises will obtain the benefit of (i) waiver of all late charges unpaid as of November 1, 2015, and (ii) deferral of payment (by addition to principal) of amounts past due as of that date for "unpaid and deferred interest, fees, escrow advances and other costs." Home Affordable Modification Agreement, ¶ 3 [Defendant's Exhibit 17, at page DX017-005]. These are substantial economic benefits.

Lastly, the Court is aware that PNC asserts in the Response that the Court should modify its Memorandum Opinion such that it finds in favor of PNC and denies any recovery to the Davises or their attorneys. The only issue now before the Court is the question of the reasonable attorneys' fees to be awarded pursuant to the Memorandum Opinion and § 13-408(b) of the MCPA. Thus, the Court cannot entertain such relief at this point in the proceeding. The Court notes, however, that it only referred to the escrow arrangement in the Memorandum Opinion in connection with ruling on the claim that the Davises incurred damages in the form of increased taxes by reason of lost interest deductions on their tax returns. Significantly, the Court denied any relief against PNC on that claim.[15]

The remainder of PNC's objections are either moot due to the filing of the Amended Memorandum, or without merit. PNC's objections are therefore overruled. After consideration of all relevant factors, the Court concludes that the compensation requested in the Amended Memorandum constitutes reasonable attorneys' fees under § 13-408(b) of the MCPA for all legal services rendered to the Davises through the date of entry of judgment in accordance with this Memorandum of Decision. Judgment will be entered accordingly.

cc:   Counsel for Plaintiffs – Mary Migues-Jordan, Esq.
      Counsel for Plaintiffs – Sari Karson Kurland, Esq.
      Counsel for Defendant – Daniel J. Tobin, Esq.

**-- END OF MEMORANDUM OF DECISION --**

---

[15] Memorandum Opinion, p. 22 at n. 79.